**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,

Case No. 3:19-md-2885

Judge M. Casey Rodgers
Magistrate Judge Gary R. Jones

This Document Relates to:

*United States of America v. 3M Company*
Case No. 3:20-mc-65
_____/

# ORDER

Pending before the Court is the Government's motion to quash Defendants' non-party deposition subpoena to Dr. James Davis (an employee of the Department of Defense) pursuant to Federal Rule of Civil Procedure 45 and *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) ("*Touhy*").  MC ECF No. 1.[1]  Magistrate Judge Robert P. Myers transferred the motion to quash from the Southern District of Mississippi to this Court on November 10, 2020, MC ECF No. 8, and Defendants have filed a response in opposition to the motion, MC ECF No. 11.  For the reasons discussed below, the Government's motion is **DENIED**.

---

[1] For ease of reference, citations to the docket in this miscellaneous matter (Case No. 3:20-mc-65-MCR-GRJ) are "MC ECF No. ___."  Citations to the docket in the MDL (Case No. 3:19-md-2885-MCR-GRJ) are "MDL ECF No. ___."

In the last two months, the Court has addressed individually the merits of challenges by federal agencies to *six* of Defendants' discovery subpoenas to current government employees.[2]  Four subpoenas (*Schulman*, *Parker*, *Donaldson*, and *Toyama*) were (as here) case-specific to the claims of Bellwether Plaintiffs in the MDL.  And two subpoenas (*Toyama* and *Robinette*) were (as here) directed to employees of the Department of Defense.  By now, the parties are intimately familiar with the background, law, and arguments discussed previously that are also applicable to this dispute.  Therefore, for the sake of brevity, they will not be repeated here unless it is necessary to understanding the Court's reasoning.

## I.  BACKGROUND

This multidistrict litigation is a collection of products liability actions concerned with whether Defendants were negligent in their design, testing, and labeling of the nonlinear dual-ended Combat Arms Earplug Version 2

---

[2] *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-56, 2020 WL 6438614, at *1 (N.D. Fla. Nov. 2, 2020) ("*Murphy*"); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885, 2020 WL 6787216, at *1 (N.D. Fla. Oct. 29, 2020), *report and recommendation adopted*, 2020 WL 6746620, at *1 (Nov. 17, 2020) ("*Robinette*"); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-55, 2020 WL 6274824, at *1 (N.D. Fla. Oct. 26, 2020) ("*Toyama*"); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-54, 2020 WL 6140561, at *1 (N.D. Fla. Oct. 19, 2020) ("*Donaldson*"); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-53, 2020 WL 6065076, at *1 (N.D. Fla. Oct. 14, 2020) ("*Parker*"); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-49, 2020 WL 5994266, at *1 (N.D. Fla. Oct. 9, 2020) ("*Schulman*").

(the "CAEv2"). Plaintiffs are servicemembers, veterans, and civilians seeking damages in this action for hearing loss, tinnitus, and related injuries caused by their use of the CAEv2. MDL ECF No. 704.

The Government is not a party to this litigation, *id.* at ¶¶ 16-20, but the parties have identified the United States' various agencies and employees as critical sources of discovery. Relevant here, on September 24, 2020, in accordance with Pretrial Order No. 50, MDL ECF No. 1340, Defendants issued a subpoena to Dr. Davis for a deposition and production of documents fifteen days later in Gulfport, Mississippi. MC ECF No. 1-1 at 1–3.

The subpoena, which was served on Dr. Davis on September 28, 2020, included a letter to United States Army Major Nicole Kim, on behalf of the Department of Defense, explaining Defendants' position on Dr. Davis' relevance to this multidistrict litigation. *Id.* at 5–9. Namely, Dr. Davis was a Hearing Conservation Program Manager at Bellwether Plaintiff Dustin McCombs' duty station (Fort Benning) from 2007 to 2009. *Id.* at 5. Defendants sought to depose Dr. Davis regarding:

> (i) [his] role and responsibilities as Hearing Conservation Program Manager at Fort Benning; (ii) the Hearing Conservation Program at Fort Benning; (iii) selection, distribution, fitting, and training for hearing protection devices, including the CAEv2, at Fort Benning; (iv) evaluation of potential noise exposures at Fort Benning

3

> and steps, if any, taken to mitigate those exposures; (v) instructions, in any form, provided at Fort Benning to service members, including Plaintiff McCombs, related to the CAEv2 or other hearing protection devices; (vi) practices, policies and procedures related to military audiological evaluations at Fort Benning; (vii) completion of documents and records regarding audiological evaluations; (vi) completion of documents and records regarding the selection, distribution, fitting, and training of patients for hearing protection devices and (vii) Plaintiff McCombs' noise exposures, use of hearing protection devices, and hearing evaluations and records at Fort Benning.

*Id.* at 6. Additionally, Defendants requested that Dr. Davis produce six categories of documents related to the distribution, training, fitting, and use of hearing protection devices, including the CAEv2, at Fort Benning from 2007 to 2009, *Id.* at 6–7.

On October 6, 2020, Defendants issued an amended subpoena for Dr. Davis' deposition to occur remotely. MC ECF No. 1-2. The next day, the Department of Defense responded to Defendants' amended subpoena in a comprehensive letter. MC ECF No. 1-3. The Department objected to the deposition subpoena as unduly burdensome, as cumulative and duplicative, and for failing to allow a reasonable time to comply. *Id.* Notably, the Department asserted that any testimony from Dr. Davis regarding his role as Hearing Conservation Program Manager and the practices of the program would be cumulative and duplicative of other

4

government witnesses (Dr. Eric Fallon, LTC John Merkley, LTC Leanne Battler, and COL Kathy Gates). *Id.* 3–4. The Department, however, did not object to Defendants' request for Dr. Davis to produce documents and stated that Dr. Davis did not have any responsive documents. *Id.* at 6.

The Government, on behalf of the Department of Defense, filed a motion to quash Defendants' deposition subpoena to Dr. Davis, MC ECF No. 1, and supporting memorandum, MC ECF No. 2, on October 8, 2020.

## II.  THE HOUSEKEEPING STATUTE, *TOUHY*, AND THE ADMINISTRATIVE PROCEDURE ACT

The Government's motion to quash is governed by the Housekeeping Statute (5 U.S.C. § 301), the Department of Defense *Touhy* regulations (32 C.F.R. § 97.1, *et seq.*), and the Administrative Procedure Act ("APA") (5 U.S.C. § 706). *Robinette*, 2020 WL 6787216, at **3–5; *see also Westchester Gen. Hosp., Inc. v. Dep't of Health and Human Servs.*, 443 F. App'x 407, 409 n.1 (11th Cir. 2011); *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991).

In short, the Housekeeping Statute authorizes the Department of Defense to adopt regulations concerning testimony by agency employees and the production of government documents. *Touhy*, 340 U.S. at 463. When deciding whether to authorize or preclude agency employees to testify or produce documents, the Department considers myriad factors,

5

including, in pertinent part, "[w]hether the request or demand is unduly burdensome or otherwise inappropriate under the applicable court rules[.]" 32 C.F.R. § 97.6(b)(1).  If the agency's decision is challenged on a motion to quash or motion to compel, the Court must determine whether it is arbitrary and capricious under the APA, such that the agency failed to "examine[] the relevant data" or articulate "a rational connection between the facts found and the choice made," *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2569 (2019).

### III.  DISCUSSION

#### A.    The Government's Motion and Defendants' Response

Turning to the dispute at hand, the Government argues that the Department's decision to preclude Dr. Davis' deposition is not arbitrary and capricious because the Department has already produced all of the records related to Dr. Davis' interaction with Plaintiff McCombs, Dr. Davis has no independent recollection of Plaintiff McCombs, and requiring Dr. Davis to participate in discovery would be unduly burdensome "especially … during a time of telework and shutdowns caused by the ongoing pandemic."  MC ECF No. 2 at 3–4.  The Government argues—seemingly in the alternative—that Defendants' subpoena should be quashed under Federal Rules of Civil Procedure 26 and 45 because it is unduly burdensome,

seeks unreasonably cumulative or duplicative discovery, and failed to allow a reasonable time to comply. *Id.* at 4–7. In support of the contention of undue burden, the Government claims that Dr. Davis did not issue any CAEv2 earplugs "during his tenure as the Hearing Program Manager" because " in 2008[] the clinic had already transitioned away from the CAEv2 to a single-flange earplug" and that he does not have any "personal knowledge regarding the potential noise exposures at Fort Benning and any steps taken to mitigate those noise exposures." *Id.* at 5.

Defendants argue that the Department's decision to preclude Dr. Davis' deposition is arbitrary and capricious. MC ECF No. 11. They contend that Dr. Davis' deposition is necessary notwithstanding that he does not have an independent recollection of Plaintiff McCombs because he may be able to testify to several other topics—the distribution, fitting, training, and use of the CAEv2 by servicemembers at Fort Benning during the relevant time period, his role as the Hearing Conservation Program Manager at Fort Benning, and the evaluation of hearing protection devices during audiograms of servicemembers. *Id.* at 3–5. Defendants also assert that this deposition is not unduly burdensome merely because it would require Dr. Davis to take time away from his work. *Id.* at 5–6. Defendants argue further that they provided Dr. Davis a reasonable time to comply with

7

the subpoena notwithstanding that the subpoena was amended three days prior to the proposed deposition date. *Id.* at 6–7.

Upon review of the administrative record,[3] the Court concludes that the Government's motion to quash is due to be denied. The Department failed to articulate a rational connection between the facts before it and its decision to preclude Dr. Davis' deposition under the applicable *Touhy* regulations. Alternatively, Defendants' subpoena is not unduly burdensome or otherwise improper under the Federal Rules of Civil Procedure.

### B. APA Review

In deciding whether to authorize Dr. Davis' deposition in this case, the Department considered whether compliance would be unduly burdensome and appropriate under court rules, 32 C.F.R. § 97.6(b)(1), MC ECF No. 1-3 at 2. The Government, however, fails to substantiate the reasoning set forth in the Department's October 7, 2020, comprehensive letter and, in turn, the Department's decision to preclude Defendants from deposing Dr. Davis.

---

[3] "[I]n reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." *Dep't of Commerce*, 139 S. Ct. at 2573. To the best of the Court's knowledge, the Government's motion and Defendants' response do not present extra-record material that was not considered by the Department of Defense.

8

The Department's claims of undue burden ring hollow.  For starters, a federal agency "may not refuse to comply with a subpoena by generally asserting there is a national crisis or that it cannot perform essential government functions."  *Sentinel Cap. Orlando, LLC v. Centennial Bank*, No. 6:12-cv-785-Orl-36GJK, 2013 WL 12156678, at *6 (M.D. Fla. Apr. 2, 2013); *see also Parker*, 2020 WL 6065076, at *4.  Here, the Department offered mostly generalized assertions about the burden of having Dr. Davis prepare and sit for a deposition.  *See, e.g.*, MC ECF No. 1-3 at 2–3 ("[D]epositions are *usually* the most burdensome means of obtaining facts in litigation." (emphasis added)).  This does not evince any effort by the Department to examine the actual evidence before it, which is error. *Toyama*, 2020 WL 6274824, at *6; *OhioHealth Corp. v. U.S. Dep't of Veteran Aff.*, No. 2:14-cv-292, 2014 WL 4660092, at *6 (S.D. Ohio Sept. 17, 2014).  In the same vein, the incidental burden on the Department and its employees to provide non-party discovery to federal litigants is not, standing alone, *undue*.  *See* 5 U.S.C. § 301 ("This section does not authorize withholding information from the public or limiting the availability of records to the public."); *United States v. Reynolds*, 345 U.S. 1, 9–10 (1953) ("Judicial control over the evidence in a case cannot be abdicated to

9

the caprice of executive officers."); *Moore*, 927 F.2d at 1198 (a federal agency "cannot put a blanket ban on all requests for testimony").

Worse here, the Government's assertion that Dr. Davis' deposition would be "especially burdensome during a time of telework and shutdowns caused by the ongoing pandemic," MC ECF No. 2 at 4, is without any support in the Department's administrative record. The Department did not preclude Dr. Davis' deposition based on his current duties or workload. To the extent this reasoning is implied in the Department's October 7, 2020, letter, it is arbitrary and capricious because the Department failed to explain with any specificity how discovery in this case would interfere with Dr. Davis' duties or why Defendants may not accommodate Dr. Davis' work schedule. *Rhoads v. U.S. Dep't of Veteran Aff.*, 242 F. Supp. 3d 985, 994–95 (E.D. Cal. 2017); *Ceroni v. 4Front Engineered Sols.*, 793 F. Supp. 2d 1268, 1278 (D. Colo. 2011); *see also Toyama*, 2020 WL 6274824, at *6.

The Department's reasoning as to undue burden and cumulativeness is also arbitrary and capricious because it ignored critical facts about the asserted scope of Defendants' deposition of Dr. Davis. The Department stated that Dr. Davis' testimony would not be relevant because he did not issue any CAEv2 earplugs as Hearing Conservation Program Manager and his clinic "had already transitioned away from the CAEv2 to a single-flange

10

earplug" in 2008.  MC ECF No. 1-3 at 3.  If these statements are true,[4] the Department failed to appreciate that they are vital to Defendants' position on the critical issue of "whether [Plaintiff] McCombs used the CAEv2 as intended or claimed, as opposed to an alternative earplug[.]"  MC ECF No. 11 at 4.

Moreover, Dr. Davis does not need an independent recollection of Plaintiff McCombs to testify regarding "the Hearing Conservation Program at Fort Benning[,]" "his "practices, policies, and procedures related to military audiological evaluations at Fort Benning[,]" his "completion of documents and records regarding audiological evaluations[,]" and other topics proposed by Defendants.  MC ECF No. 1-1 at 6.  Specifically, the Government failed to consider that Dr. Davis could testify concerning notations in the records of Plaintiff McCombs' audiograms at Fort Benning (when Dr. Davis was the Hearing Program Conservation Manager there) and to whether soldiers like Plaintiff McCombs were instructed on the proper use and fit of CAEv2.  *Toyama*, 2020 WL 6274824, at *6; *Brown v. U.S. Dep't of Veterans Aff.*, No. 2:17-cv-1181-TMP, 2017 WL 3620253, at *8 n.12 (N.D. Ala. Aug. 22, 2017).

---

[4] It is unclear what the Department meant when it said Dr. Davis' clinic "transitioned away" from the CAEv2 prior to 2008.

11

Finally, assuming that the information sought by Defendants from Dr. Davis was also available to Defendants in earlier document productions, those documents cannot express Dr. Davis' testimony "with the clarity and tone as he personally can in his deposition." *In re Vioxx Prods. Liab. Litig.*, 235 F.R.D. 334, 346 (E.D. La. 2006).

In sum, the Court concludes the Department's decision to preclude Dr. Davis' deposition is arbitrary and capricious because it is not supported by the administrative record. The Department failed to examine critical facts as to the relevance of Dr. Davis' testimony, other than that he lacked an independent recollection of Plaintiff McCombs. The Department, instead, relied on generalized assertions concerning the burden of producing non-party discovery, which does not comport with the Department's *Touhy* regulations that require it to consider whether compliance would be an *undue* burden. Finally, the Department placed inordinate emphasis on its earlier production of documents in lieu of the requested deposition.

## C. Federal Rules of Civil Procedure

The Government's reliance on the Federal Rules of Civil Procedure fares no better.[5] The Court must quash a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). The Government, as the movant seeking to quash the subpoena, bears the burden of proof on this issue. *In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1306 (S.D. Fla. 2012); *Fadalla v. Life Auto. Prods., Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007). Courts consider a variety of factors to determine whether a subpoena is unduly burdensome—the relevance of the information requested, the requesting party's need for discovery, the breadth of the request, the time period covered, the particularity of the request, and the burden imposed—but it is typically required that the movant submit an affidavit or other evidence revealing the nature of the asserted burden. *Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 449 (N.D. Tex. 2015); *see also John v. Keller Williams Realty, Inc.*, No. 6:19-cv-1347-Orl-40DCI, 2019 WL 7482200, at *2 (M.D. Fla. Nov. 19, 2019) ("Claims of undue burden should be supported by a

---

[5] Although the Court must apply the APA's arbitrary and capricious to disputes such as this until the Eleventh Circuit or United States Supreme Court says otherwise, the Court will address these arguments because it leads to the same result as APA review.

13

statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome.").

Here, the Government has not presented an affidavit or other evidence in support of its claim of undue burden. This alone is a basis to reject the Government's claim. *Green v. Cosby*, 152 F. Supp. 3d 31, 37 (D. Mass. 2015). Nevertheless, the Court has considered the evidence proffered by the Government regarding Dr. Davis' employment, his inability to independently recall Plaintiff McCombs service at Fort Benning, and any "cumulative impact" compliance would have on the Department of Defense, MC ECF No. 1-3 at 2–3; MC ECF No. 2 at 5, and concludes that Defendants' subpoena does not present an undue burden on the Department or Dr. Davis. Defendants have asked Dr. Davis to attend a brief, remote deposition so he may testify to his experience as a Hearing Conservation Program Manager during a discrete time period and to explain notations in Plaintiff McCombs' military records. Compliance may be an inconvenience for Dr. Davis, but this is no different from a Rule 45 deposition subpoena issued to any non-party.

Defendants' subpoena is not otherwise improper under the Federal Rules of Civil Procedure. The subpoena does not seek "unreasonably cumulative or duplicative" discovery, Fed. R. Civ. P. 26(b)(2)(C), because

14

Defendants plan to depose Dr. Davis on matters not readily apparent in Plaintiff McCombs' military records or available in other discovery. To the extent there may be any overlap between Dr. Davis' testimony as a Hearing Conservation Program Manager at Fort Benning during Plaintiff McCombs' service and that of other government employees involved generally in the Hearing Conservation Program (Dr. Fallon, LTC Merkley, LTC Battler, and COL Gates), it is not so unreasonable as to warrant quashing the subpoena.

Lastly, the subpoena gave the Department and Dr. Davis "a reasonable time to comply." Fed. R. Civ. P. 45(d)(3)(A)(i). This Court has held that this rule "does not specify what constitutes a reasonable time to comply." *Minor I Doe through Parent I Doe v. School Bd. for Santa Rosa Cty., Fla.*, No. 3:08-cv-361-MCR-EMT, 2009 WL 10674249, at *2 (N.D. Fla. Nov. 23, 2009). Instead, "common sense dictates that reasonableness is determined in relation to the extent of the materials requested and other underlying circumstances in the case." *Id.* Here, the subpoena required a brief remote deposition more than one week after the service date, to be exact nine *business* days. The Government places too much emphasis on the later-served amended subpoena, which changed the means of taking the deposition from in-person to remote. MC ECF No. 1-2. It is obvious

that the Department was able to respond to the merits of Defendants' subpoena (and amended subpoena) before the return date because it sent Defendants a comprehensive letter with its position on October 7, 2020. MC ECF No. 1-3.

In sum, the Government's motion to quash Defendants' subpoena under the Federal Rules of Civil Procedure is due to be denied because the subpoena is not unduly burdensome, does not seek unreasonably cumulative or duplicative discovery, and allowed Dr. Davis and the Department of Defense a reasonable time to comply.

## IV.  CONCLUSION

Accordingly, it is **ORDERED** that the Government's motion to quash, MC ECF No. 1, is **DENIED**.  Defendants **must** serve a copy of this order by email on Jacqui Snead at the Department of Justice, United States Army Major Nicole M. Kim, and Plaintiffs' Lead Counsel Bryan F. Aylstock.

**DONE AND ORDERED** this 8th day of December 2020.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge